[Cite as *State v. Norman*, 2012-Ohio-4145.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 11 CAA 12 0115 |
| CHRISTOPHER M. NORMAN | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No.  11 CR I 08 0421


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      September 11, 2012


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

CAROL HAMILTON O'BRIEN      WILLIAM T. CRAMER
PROSECUTING ATTORNEY      470 Olde Worthington Road
GREGORY A. TAPOCSI      Suite 200
ASSISTANT PROSECUTOR      Westerville, Ohio  43082
140 North Sandusky Street, 3rd Floor
Delaware, Ohio  43015

*Wise, J.*

{¶1} Appellant Christopher M. Norman appeals his conviction, in the Delaware County Court of Common Pleas, on one count of felony domestic violence. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} Appellant and Deanna Norman, the victim in this case, were married in 2002 and divorced in 2008. They have no children together. According to Deanna, appellant often drank and got violent during their marriage. Deanna had contacted law enforcement as a result of some of these incidents. It is undisputed that appellant has had a prior domestic violence conviction and a conviction for violating a protection order. See Tr. 108-109; 111-112; 10/19/11 Stipulation.

{¶3} While the divorce was pending, Deanna obtained a protection order against appellant. But in April 2011, subsequent to the final divorce decree, appellant and Deanna moved back in together. They began renting a house in exchange for refurbishing it. They lived there with her two dogs. Appellant worked as a glass repairman; Deanna did not work, but she was receiving social security payments for borderline bipolar and dyslexia issues.

{¶4} On July 27, 2011, after Christopher finished work, they went to a co-worker's house to drink beer and play foosball. Appellant and Deanna formed a team against appellant's boss and the boss's son. Appellant was upset that they were losing, and they eventually quit playing. Appellant and Deanna left around 11:00 P.M., having each consumed three twenty-four ounce cans of beer. Tr. at 60. When they got home, they continued drinking beer from a 30-pack in the refrigerator. At some point, they began arguing about the remodeling work around the house. Appellant called Deanna

"a fat, fucking, lazy bitch," told her that her "dogs were useless fucking commodities." Tr. at 61. Appellant at some point started throwing beer cans at Deanna's dogs, and she yelled at him to leave the dogs alone. Tr. at 62. Appellant told her to get out, so she called her nephew to come and get her. Tr. at 64.

{¶5} The next day, Deanna got up around 11:00 a.m. and called her daughter to take her back to the house to get the dog food, her clothes, and her truck. She waited until the afternoon, but when she got there, she saw appellant's car. Deanna went to the back door and used her key to get into the house, even though appellant had stacked some remodeled kitchen cabinets in front of the back door. Appellant noticed the words "fuck you" written on the door just above the lock. She also subsequently observed that all the remaining beer from the night before was gone.

{¶6} As Deanna entered the back of the house, appellant came towards her from the front room. She told him she was not there to start anything, she just wanted to get her things. Appellant accused her of breaking into the house and told her to leave. Tr. at 66-68. Deanna ignored him and went about gathering her clothes and the dog food. Appellant again told her to get out of the house and pushed her "full force" from behind, causing her to fall onto the bed. Tr. at 69-71. Deanna went back to the front room and observed that appellant's laptop computer was on the coffee table and was plugged into the wall. She then accused him of communicating with other women online; appellant replied it was none of her business. Tr. at 69-72.

{¶7} According to Deanna, as she walked away from the area, she tripped over the computer wires and almost knocked the laptop off the table. Appellant caught the laptop and responded by kicking her stereo. Deanna retaliated by grabbing the laptop

and trying to throw it at the wall. Appellant grabbed her by the arms to stop her and they fell back onto the couch. Appellant told her he would "stomp [her] f---ing face in." Tr. at 74. Appellant's glasses came off during the fracas; at that point appellant got off of her.

{¶8} Deanna then telephoned the police. Tr. at 74. Deanna later testified that as she made the call, appellant took the coffee table and rammed it into her knees, pinning her between the table and a loveseat. Tr. at 77. According to Deanna, appellant was "between myself and any exit other than the windows and he wouldn't let me pass." Tr. at 77.

{¶9} Eventually, appellant grabbed some of his belongings and left the premises before police officers arrived. Tr. at 79.

{¶10} Two deputies from the Delaware County Sheriff's Office responded to the call, one of whom, Deputy Stephanie Shine, later testified at trial. Deputy Shine recalled that Deanna was upset, afraid, and crying. Tr. at 40-41. Based on the disarray in the home, the deputy thought there had been a physical altercation. Tr. at 42. The deputy found a remote control that had been smashed and an ashtray on the floor that appeared to have been thrown. Tr. at 46. Deanna described her version of events to the deputy, including her allegation that appellant had pushed a coffee table under her legs. Tr. at 49. Deputy Shine did not notice any physical injuries at first, but later that day she noticed a bruise on Deanna's arm. Tr. at 41. Deanna told the deputy she did not know the cause of the arm bruise. Tr. at 47.

{¶11} In the meantime, another deputy called appellant, but he did not come back home to talk to them. Tr. at 43. Later that afternoon, deputies got a tip that appellant had returned home, so they returned and arrested him. Tr. at 44. Appellant

purportedly told the officers that Deanna had kicked his glasses off of his face, but he did not mention pushing her or threatening her. Tr. at 50-51.

{¶12} On August 5, 2011, appellant was charged with two counts of domestic violence, one for causing or attempting to cause physical harm in violation of R.C. 2919.25(A), and one for threatening physical harm in violation of R.C. 2919.25(C). Both charges were elevated based on a prior conviction under R.C. 2919.25(D)(3), so that Count I charged a fourth-degree felony and Count II a second-degree misdemeanor.

{¶13} The case proceeded to a jury trial on October 28, 2011. Following the jury trial, appellant was found guilty of the felony charge (Count I), but not guilty of the misdemeanor charge (Count II). Via a judgment entry filed November 29, 2011, the trial court sentenced appellant to three years of community control with various additional conditions.

{¶14} On December 14, 2011, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

{¶15} "I. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16, OHIO CONSTITUTION BECAUSE THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE THAT APPELLANT COMMITTED DOMESTIC VIOLENCE.

{¶16} "II. THE JURY'S FINDING THAT APPELLANT COMMITTED DOMESTIC VIOLENCE AGAINST HIS EX-WIFE WAS NOT SUPPORTED BY THE WEIGHT OF [THE] EVIDENCE."

I.

{¶17} In his First Assignment of Error, appellant argues his domestic violence conviction was not supported by sufficient evidence. We disagree.

{¶18} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶19} In the case sub judice, appellant was convicted of domestic violence in violation of R.C. 2919.25(A), a felony of the fourth degree. Said statute states as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶20} Appellant's first challenge to the sufficiency of the evidence concerning his conviction is that "[t]he entire case rested on the testimony of Deanna" that "was of dubious validity." Appellant's Brief at 12. However, when reviewing the sufficiency of the evidence, an appellate court generally does not weigh the credibility of the witnesses. *See State v. Marrero*, Franklin App.No. 10AP–344, 2011-Ohio-1390, ¶ 10, citing *State v. Yarbrough,* 95 Ohio St.3d 227, 767 N.E.2d 216, 2002–Ohio–2126, ¶ 79. *See, also, State v. Harrier*, Morgan App.No. CA 94-8, 1995 WL 495889, (distinguishing between a "weight and/or credibility question" and a "sufficiency of the evidence" question). We thus find no merit in appellant's sufficiency challenge in this regard.

{¶21} Appellant's second sufficiency argument goes to the "knowing" element of the offense of domestic violence. "Knowingly" is defined in R.C. 2901.22(B) as follows:

{¶22} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶23} The record in the case sub judice reveals Deanna's trial testimony that appellant, after earlier grabbing her and forcing her onto the couch, subsequently "rammed" the coffee table into Deanna's legs, pinning her against the loveseat, having shortly beforehand stating he would "stomp her face in." *See* Tr. at 74, 77-78. Upon review of the record, we hold rational triers of fact could have found, beyond a reasonable doubt, that appellant knowingly caused or attempted to cause physical harm to a household member for purposes of R.C. 2919.25(A). We therefore hold appellant's conviction for domestic violence was supported by sufficient evidence.

{¶24} Accordingly, appellant's First Assignment of Error is overruled.

II.

{¶25} In his Second Assignment of Error, appellant contends his domestic violence conviction was against the manifest weight of the evidence. We disagree.

{¶26} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed

and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717. Furthermore, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render [a] defendant's conviction against the manifest weight * * *." *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP–739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236.

{¶27} Appellant in the case sub judice essentially maintains that the evidence merely demonstrated that accidental physical contact occurred as he and Deanna struggled over the laptop and other items in the house. We note the record additionally indicates that appellant took the stand at trial and described a history of volatility and jealousy in his relationship with Deanna. He asserted that Deanna was "severely" bipolar and had a history of angry outbursts. Tr. at 125. Appellant testified that had to go to work the day after the foosball party, and he was worried that Deanna would come back and start breaking things while he was gone. Appellant testified that Deanna had broken computers and televisions before, broken his glasses twice, and smashed his car windows. Tr. at 118. Before Deanna came back on July 28, 2011, appellant attempted to barricade the back doors to the house and decided to call off going to work. Tr. at 118-119. In his recollection, when he grabbed for his laptop during the ensuing events, Deanna fell back on the couch, at which time she kicked at the side of his body. Tr. at 120-122. During her cross-examination, Deanna admitted that she

smashed the television remote control on the coffee table during their argument. She also admitted that she knew appellant prized his television and laptop computer. Tr. at 88-90.

{¶28}  Nonetheless, while it appears to us that either appellant or Deanna could have probably avoided the confrontation of July 28, 2011 in the first place by requesting in advance the assistance of law enforcement in removing Deanna's belongings, we find the jury could have properly decided that appellant's violent and verbally abusive response to her return to the house was not defensible, and we hold upon review that the jurors, in resolving any conflicts in the evidence, did not create a manifest miscarriage of justice requiring a new trial.

{¶29}  Appellant's Second Assignment of Error is therefore overruled.

{¶30}  For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.

_____

_____

_____

                                                                          JUDGES

JWW/d 0813

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CHRISTOPHER M. NORMAN | : | |
| | : | |
| Defendant-Appellant | : | Case No. 11 CAA 12 0115 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

Costs assessed to appellant.


_____

_____

_____

JUDGES